IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2019 MAR 15  PM 2: 40

CLERK M. akis
SO. DIST. OF GA.

PORSHA L. WHITFIELD,         *
                            *
        Plaintiff,          *
                            *
    v.                      *          CV 117-098
                            *
FLUOR ENTERPRISES, INC.,    *
                            *
        Defendant.          *
                            *

---

**O R D E R**

---

Before the Court is Defendant's motion for summary judgment. (Doc. 33.)    The motion requests judgment for Defendant on Plaintiff's sexual harassment and retaliation claims.    For the reasons set forth below, Defendant's motion is **GRANTED**.


## I. BACKGROUND

This employment discrimination case arises from Plaintiff Porsha Whitfield's employment with Defendant Fluor Enterprises, Inc. as a temporary craft worker at Plant Vogtle, where Defendant managed the nuclear expansion construction project.    (Dep. of Porsha L. Whitfield ("Pl. Dep."), Doc. 34, at 54-55, Ex. 3; see also Decl. of Brian Reid ("Reid Decl."), Doc. 33-3, ¶ 2.)    The essence of Plaintiff's *pro se* amended complaint is that she was subjected to sexual harassment and was terminated in retaliation

for complaining about that harassment and for her religious beliefs. (Am. Compl., Doc. 4, at 4-5.)

## A. JSA Meetings on April 4th and 5th

Every day, Plaintiff and her fellow craft workers attended a Job Safety Analysis ("JSA") meeting. (Pl. Dep., at 66.) The meetings were led by General Foremen, who at that time were Darrum "Bo" Lewis and Alonza Martin. (Id. at 41-43.) At the April 4, 2016, meeting Lewis gave a presentation on CPR, during which he stated his preference to have a female co-worker give him mouth-to-mouth resuscitation. (Reid Decl., Ex. 8 ("Lewis Statement").) Plaintiff contends Lewis stated, "if it was Porsha, I'll lay down there, I would want her to give me mouth-to-mouth a long time."[1] (Pl. Dep., at 93-94.) Defendant took statements from the other employees at the meeting; of those fifteen statements three employees do not recall CPR being discussed at all, eight remember the CPR discussion but did not hear Plaintiff's name ever mentioned, and four remember Lewis specifically naming Plaintiff. (Reid Decl., Ex. 5, at 5 ("Investigation Report").) Of the four that corroborated Plaintiff's version of events, two stated Plaintiff's name was mentioned "matter-of-factly" without any sexual connotations, one said it was a joke, and another could not characterize the statement. (Id.)

---

[1] Plaintiff's April 6, 2016 statement recalled the comment as "if Porsha do it, I'm going to lay back down so she can keep doing it." (Reid Decl., Ex. 6 ("Whitfield Statement").)

The next day, April 5th, the JSA meeting was again led by Lewis. (Pl. Dep., at 66.) During the meeting, Plaintiff was applying make-up to her face, which caused Lewis to ask that everyone pay attention to his presentation. (Id. at 67, Ex. 2.) Plaintiff contends she raised her hand; Lewis gave her permission to speak; and she told Lewis "I've been doing this for years, I don't even use a mirror." (Id. at 71.) Lewis' statement maintains Plaintiff said "what that got to do with my make up being put on" and was disrespectful to him. (Reid Decl., Ex. 8 ("Lewis Statement").) Four witnesses to the incident submitted statements confirming Plaintiff was disrespectful to Lewis during the meeting and that she threatened to take the problem to human resources. (Reid Decl., Ex. 10.) One witness, Pamela Johnson, specifically mentioned Plaintiff's outbursts were frequent and made "for a chilled environment amongst her co-workers." (Id.)

## B. April 6th Discipline Meeting

A day later, Plaintiff met with Lewis, Alonza Martin, her supervisor Stephen Weddon, and union representative Joe Baker regarding the previous day's incident. (Pl. Dep., at 84-85.) Plaintiff received a "write-up" for insubordination towards Lewis at the April 5th JSA meeting. (Id. Ex. 7.) Plaintiff disagreed with the discipline and told Lewis "if you dig one ditch you better

3

dig two."[2]   (Id. at 95, Ex. 14; see also Reid Decl., ¶ 12.)

Plaintiff also told Weddon that Lewis was only writing her up because she rejected sexual advances from him and Martin.  (Pl. Dep., at 93.)   Plaintiff's "ditch" comment was considered a threatening statement by Lewis and the others at the meeting. (Reid Decl., ¶¶ 15, 18.)   Consequently, on April 7th, Plaintiff was placed on paid suspension.  (Id. ¶ 15; Pl. Dep., at 126.)

## C. Sexual Harassment Investigation

After the April 6th discipline meeting, Weddon informed Labor Relations Specialist Brian Reid about Plaintiff's sexual harassment allegations.  (Reid Decl., ¶¶ 12-13.)   Reid immediately began investigating the matter.  (Id. ¶ 13.)   His investigation looked into the incident leading to Plaintiff's insubordination write-up and her ditch comment but focused primarily on her sexual harassment allegations.  (Id.)   Reid interviewed or took written statements from twenty-two individuals, including Lewis, Martin, Weddon, and many of the craft workers.  (Id. ¶ 16; Investigation Report, at 2.)

Plaintiff's written statement included the following allegations: (1) Lewis' mouth-to-mouth comment on April 4th; (2) Lewis telling Martin and Plaintiff that he could see his penis

---

[2] The record makes it unclear what the exact wording of the phrase was, but it is undisputed that Plaintiff said something closely resembling the above-quoted statement.

again after losing weight; (3) Lewis asking Plaintiff out twice;[3] (4) both Foremen deciding to move Plaintiff's work area in an attempt to keep her away from a male co-worker; (5) Martin commenting multiple times that Plaintiff looked like his former girlfriend because the two were "built up just alike;" and (6) Martin asking Plaintiff out. (Whitfield Statement.) During Reid's interview with Plaintiff, she added that Martin hugged her and Martin prompted Lewis' mouth-to-mouth comment by asking if Lewis would like any of the "pretty ladies" to give him CPR. (Investigation Report, at 2.)

Lewis admitted to making the mouth-to-mouth comment but denied naming Plaintiff specifically. (Lewis Statement.) Similarly, he admitted to making the weight loss comment, but did not direct it at Plaintiff. (Id.) For his part, Martin denied ever hugging Plaintiff, having an inappropriate conversation with her, or being present at the April 4th JSA meeting when CPR was discussed. (Reid Decl., Ex. 8 ("Martin Statement").) Martin also denied telling Plaintiff she looked like his former girlfriend. (Investigation Report, at 5.) Instead, he told Plaintiff that she looks like his friend's wife, and he maintained it was an innocent comment. (Id.) Finally, both Lewis and Martin informed Reid that

---

[3] It is unclear whether this was an attempt to ask Plaintiff on a date or to go out as friends. Plaintiff testified that she was friends with Lewis before he was promoted to General Foreman. (Pl. Dep., at 102.) Further, one of the two times Lewis asked Plaintiff out, he made the invitation to Plaintiff and another co-worker at the same time. (Investigation Report, at 1.)

the decision to move Plaintiff to a different work station was made because Plaintiff frequently left her assigned area when left unsupervised. (Id.)

Reid interviewed or received a statement from at least eighteen other employees regarding the events of April 4th and 5th. (Id. at 2.) Two witnesses gave an account of the April 5th incident where Plaintiff was insubordinate, fourteen witnesses addressed the April 4th incident where Lewis made the mouth-to-mouth comment, and two witnesses spoke about both incidents. (See id.) As discussed previously, the witness accounts differed slightly, but at least four corroborated Plaintiff's version of events for April 4th. (Id. at 3-4.) However, each of the fourteen employees who discussed the April 4th incident stated they never witnessed any inappropriate or flirtatious behavior by Lewis and Martin. (See id.) After conducting a two-week investigation, Reid was unable to substantiate Plaintiff's allegations of sexual harassment. (Id. at 6.)

## D. Plaintiff's Termination

Beyond the sexual harassment allegations, Reid investigated Plaintiff's ditch comment at the April 6th disciplinary meeting. Reid took statements from Plaintiff, Weddon, Lewis, and Martin, each of whom confirmed the ditch comment was made. (Investigation Report, at 2; Pl. Dep., at 95.) Lewis perceived the comment as a

threat. (Reid Decl., ¶ 18.) While Plaintiff admitted to making the statement, she denied that it was a threat. (Pl. Dep., 136-41.) Rather, she claimed it was a "a southern term" that comes from the Bible[4] and simply means "be careful how you treat people." (Id. at 140.) Reid concluded, however, that it "was reasonable to assume that someone could take the comment as a threat particularly in the context that Ms. Whitfield made the comment." (Reid Decl., ¶ 18.)

Dan Cozzolino, Defendant's Regional Facilities Manager, reviewed Reid's investigation and proposed Plaintiff be terminated based on the threatening ditch comment. (Id. ¶ 19.) Cozzolino specifically recalled another employee, Chianta Young, made the same comment in a threatening manner and was terminated. (Id. ¶¶ 19, 22.) Reid concurred in the decision and prepared a report for Defendant's Executive Review Board ("ERB"). (Id. Ex. 13 ("ERB Report").) The report specifically cites Section 11(b) of the Labor Agreement governing Plaintiff's employment as the policy supporting termination. (See ERB Report, at 3; Reid Decl., ¶ 6, Ex. 3.) Section 11(b) makes it a terminable offense to threaten another employee. (Reid Decl., Ex. 3.) Notably, the report also disclosed Plaintiff's sexual harassment allegations and outcome of Reid's investigation. (ERB Report, at 2.) The ERB reviewed and

---

[4] The Biblical origin of this phrase is the basis for Plaintiff's previously dismissed religious discrimination claim. (See Am. Compl., at 4-5.)

approved the termination decision and found that no adverse action was being taken against Plaintiff because she engaged in protected activity. (Reid Decl., ¶ 20.) On either April 25th or 27th, Reid informed Plaintiff that her employment was terminated. (Id.; Pl. Dep., at 125-26.)

## E. Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2016, and was issued a right-to-sue letter almost a year later. (Am Compl., at 7-11.) Next, Plaintiff, proceeding *pro se*, filed this action alleging retaliation, sexual harassment, and wrongful termination based on religious and "sexual" discrimination. (Id. at 4-5; see also Compl., Doc. 1.) Because Plaintiff filed a motion to proceed *in forma pauperis* (Doc. 2), her complaint was screened under 28 U.S.C. § 1915. (See Order of Aug. 30, 2017, Doc. 3.) The United States Magistrate Judge recommended the Court dismiss Plaintiff's religious discrimination claim, but allow her gender discrimination and sexual harassment claims to proceed. (Report and Recommendation ("R&R"), Doc. 6, at 6.) On December 5, 2017, the Court adopted that recommendation (Doc. 9) and later denied Plaintiff's motion for reconsideration on the issue. (See Order of Oct. 26, 2018, Doc. 42.) Now, Defendant moves for summary judgment as to all remaining claims. (Doc. 33.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 323. "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact:

9

it 'must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.'" Four Parcels of Real Prop., 941 F.2d at 1438 (quoting Celotex Corp., 477 U.S. at 331 (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" Id. (quoting Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)).

When the movant does not carry the burden of proof at trial, it may satisfy its initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606–08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. 317). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. For example, if the movant presented evidence

10

affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033–34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

The Clerk of Court gave Plaintiff timely notice of Defendant's summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 35.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied.

## III. DISCUSSION

Defendant's motion addresses two claims, hostile work environment based on sexual harassment and retaliation. (See Doc. 33.) At her deposition, Plaintiff maintained that she was bringing a third claim for wrongful termination. (Pl. Dep., at 25.) That claim is apparently based on her ditch comment and not based on gender discrimination. (Id. at 26, 29.) The Court, however, previously dismissed Plaintiff's religious discrimination claim that was based on the Biblical origin of her ditch comment.[5] (Order of Dec. 5, 2017, Doc. 9.) Even liberally construing Plaintiff's *pro se* amended complaint, it is difficult to see how Plaintiff could bring a separate wrongful termination claim if it is not based on gender discrimination because her religious discrimination claim was dismissed. As such, the Court construes Plaintiff to have two remaining claims in this suit, sexual harassment and retaliation.

### A. Sexual Harassment

A sexual harassment hostile work environment claim under Title VII requires a plaintiff to show harassment "sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)

---

[5] The Court also denied Plaintiff's motion for reconsideration on the issue. (Order of Oct. 26, 2018, at 5.)

(quoting <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986)).

To prevail, the employee must prove the following:

> (1) that [she] belongs to a protected group; (2) that
> [she] has been subject to unwelcome harassment; (3) that
> the harassment was based on a protected characteristic
> of the employee . . . (4) that the harassment was
> sufficiently severe or pervasive to alter the terms and
> conditions of employment and create a discriminatorily
> abusive working environment; and (5) that the employer
> is responsible for such environment under either a
> theory of vicarious or of direct liability.

<u>Bryant v. Jones</u>, 575 F.3d 1281, 1296 (11th Cir. 2009) (quoting

<u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir.

2002)).

To establish that harassment was sufficiently severe or
pervasive enough to alter the terms and conditions of employment,
a plaintiff must "subjectively perceive" the harassment as
hostile, and "this subjective perception must be objectively
reasonable." <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1246 (11th
Cir. 1999) (quoting <u>Harris</u>, 510 U.S. at 21–22). To determine
whether harassment objectively altered an employee's terms or
conditions of employment, courts use four factors: "(1) the
frequency of the conduct; (2) the severity of the conduct; (3)
whether the conduct is physically threatening or humiliating, or
a mere offensive utterance; and (4) whether the conduct
unreasonably interferes with the employee's job performance." <u>Id.</u>

13

Construing the evidence in the light most favorable to Plaintiff, the conduct she alleges in her sexual harassment claim includes (1) being asked out by Lewis twice and Martin once, (2) Lewis' comment that he wanted Plaintiff to give him mouth-to-mouth resuscitation during the April 4th JSA meeting, (3) Martin stating he could see his penis again due to weight loss, (4) reassigning Plaintiff to a different work station in an apparent attempt to keep her away from a male co-worker, (5) Martin hugging Plaintiff, and (6) Martin's comments that Plaintiff looked like his former girlfriend. (Pl. Dep., at 93-114, Ex. 8; see also Investigation Report, at 1-2; Whitfield Statement.)

The timing of Plaintiff's sexual harassment grievance raises questions as to whether she subjectively perceived the harassment as severe. See Dearth v. Collins, 2005 WL 6111523, at *8 n.7 (S.D. Ga. Mar. 17, 2005) (questioning Plaintiff's subjective perception based on "the length of time Plaintiff allowed the conduct to occur without complaint and the circumstances under which she reported the sexual harassment"). Plaintiff spent many months allowing the alleged conduct to occur without complaint. More importantly, Plaintiff only raised the sexual harassment allegations when her back was against the wall at the April 6th disciplinary meeting. Further, her complaint was made in conjunction with stating "if you dig one ditch, you better dig two," implying that she wanted to get Lewis in trouble for writing her up.

In addition, Quiovetta Devoe – one of the witnesses who corroborated Plaintiff's story about the mouth-to-mouth comment – stated she never heard Plaintiff complain about Lewis prior to the April 6th disciplinary meeting. (Investigation Report, at 3; Reid Decl., Ex. 10.) Plaintiff has presented no evidence to explain why she did not raise the issue earlier. Accordingly, the Court concludes that based upon the length of time it took Plaintiff to complain and the context in which she raised her allegations, Plaintiff did not subjectively perceive Lewis and Martin's conduct as sufficiently severe or pervasive to alter the terms of her employment.

Assuming *arguendo* that Plaintiff subjectively perceived the conduct as hostile, she still cannot show that the alleged harassment was objectively severe or pervasive. The Court's analysis on this issue is guided by the <u>Mendoza</u> factors.

The alleged harassment does not rise to the level of severity necessary to find the conduct objectively hostile. While Lewis and Martin's behavior and comments were perhaps immature and had some sexual undertones, their actions fall short of conduct that is so severe as to alter the terms and conditions of Plaintiff's employment. <u>See</u> <u>Henderson v. Waffle House, Inc.</u>, 238 F. App'x 499, 502-03 (11th Cir. 2007) (holding a supervisor repeatedly referencing the plaintiff's large breasts to employees and customers, calling her "Dolly," pulling her hair, and commenting

"that he would get in trouble if he said why [plaintiff's] presence made him nervous" were insufficient to create a factual issue as to whether harassment was sufficiently severe to alter the terms and conditions of employment). Title VII is not a "general civility code" and "simple teasing, . . . offhanded comments, and isolated incidents (unless extremely serious)" will not constitute a hostile work environment. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (internal quotations omitted).

Next, the alleged harassment was not physically threatening, but more appropriately characterized as offensive utterances or simple teasing. Martin's weight loss comment, Lewis' comment that Plaintiff looked like a former girlfriend, asking Plaintiff out, and hugging her do not rise to the level required to alter the terms and conditions of employment. <u>See</u> <u>Mitchell v. Pope</u>, 189 F. App'x 911, 913-14 n.3 (11th Cir. 2006) (holding sixteen incidents over four years including supervisor's multiple comments about the plaintiff's attractive body, attempting to kiss the plaintiff, lifting her over his head, rubbing against her, and reaching across her chest were not severe enough for liability to attached under Title VII). Plaintiff even admitted that Martin's comments about who she looked like were not offensive; rather, she though they were "inappropriate" only after he repeated them. (Pl. Dep., at 114-15.) While the mouth-to-mouth comment may have been subjectively humiliating to Plaintiff, the overwhelming consensus

16

of her co-workers was that the comment was not sexual in nature and was made in a joking manner. (See Reid Decl., Ex. 10.)

Finally, Plaintiff introduced no evidence on how the harassment unreasonably interfered with her job performance. Again, it is doubtful that the alleged harassment had a significant impact on Plaintiff considering she waited many months to report the issue and only did so when her own conduct was called into question.

In sum, Plaintiff failed to create a genuine issue of material fact on the fourth element of her hostile work environment claim. Under the relevant Mendoza factors, the alleged harassment was not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. As such, Defendant is entitled to summary judgment on Plaintiff's sexual harassment hostile work environment claim.

## B. Retaliation

Under Title VII, it is unlawful to discriminate against any individual for engaging in a statutorily protected activity, such as filing a charge of discrimination with the EEOC or using an employer's internal grievance procedure. 42 U.S.C. § 2000e-3(a); see also Rollins v. State of Fla. Dep't of Law Enf't, 868 F.2d 397, 400 (11th Cir. 1989). Where, as here, the plaintiff's evidence of retaliation is based on circumstantial evidence, the

Court employs the familiar burden shifting framework from McDonnell Douglas.[6] Bryant, 575 F.3d at 1307-08.

First, the plaintiff must establish a prima facie case by proving (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). If the Plaintiff can establish those elements, "the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." Bryant, 575 F.3d at 1308. If the defendant rebuts the presumption of retaliation, the burden then shifts back to the plaintiff to show "the defendant's proffered reason was merely a pretext to mask discriminatory actions." Id.

There is no dispute that Plaintiff engaged in statutorily protected activity by filing an internal complaint of sexual harassment and that she suffered an adverse employment action in being terminated. As to the third element, Plaintiff relies primarily on the timing of her termination and the complaint about sexual harassment to carry her burden. To prove causation a plaintiff need only show "that retaliatory animus was one factor in the adverse employment decision." Brown v. Ala. Dep't of

_____

[6] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Transp., 597 F.3d 1160, 1182 (11th Cir. 2010). "But mere temporal proximity, without more, must be 'very close.'" Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). Disparities of three or four months are not enough; the employee's termination must be within two weeks to provide circumstantial evidence of a causal connection. Id.; Jefferson v. Sewon Am., Inc., 891 F.3d 911, 926 (11th Cir. 2018).

In this case, Plaintiff's employment was terminated on April 25th,[7] nineteen days after she made the complaint of sexual harassment. However, Plaintiff was on paid suspension for the entirety of that time, and Defendant was conducting its internal investigation until April 19th. (Investigation Report, at 1.) Thus, there was only one week between the conclusion of Defendant's internal investigation and Plaintiff's termination. Construing all of the facts in Plaintiff's favor, the Court finds that the one-week disparity between the conclusion of the internal investigation and Plaintiff's termination is sufficient to carry her burden to prove causation.

To rebut the presumption of retaliation, Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's termination — threatening another employee. Plaintiff's ditch

---

[7] Plaintiff testified she was terminated on April 27th, however, the Court will assume the date of termination was the 25th, consistent with its duty to construe the facts in the light most favorable to the non-movant.

comment was interpreted by Lewis as a threat and was made in a context where it could reasonably be interpreted as a threat. Plaintiff explained that the comment meant Lewis should "be careful how [he was] saying things he said in that meeting" because by getting Plaintiff in trouble Lewis may "be the one to fall in that same ditch." (Pl. Dep., at 140-41.) Reid's investigation concluded "[i]t was reasonable to assume that someone could take the comment as a threat particularly in the context that Ms. Whitfield made the comment." (Reid Decl., ¶ 18.) Plaintiff even admitted that the context of a statement matters saying, "anything could be taken as a threat" depending on "who you're talking to and how they take it." (Pl. Dep., at 151.)

Moreover, Defendant's actions are consistent with its proffered reason for terminating Plaintiff. Dan Cozzolino assessed Reid's investigation and proposed Plaintiff be terminated, Reid concurred in the decision and prepared a report for the ERB, who approved the decision. At each stage, Defendant cited Plaintiff's threatening ditch comment as the reason for termination. In fact, Cozzolino specifically recalled a nearly identical incident two months prior to Plaintiff's termination in which another employee, Chianta Young, told her General Foreman "if you are going to dig one hole, you better dig two" in response to being disciplined. (Reid Decl., ¶¶ 19, 22.) Young was fired

for making a threatening statement in violation of Section 11(b) of the Labor Agreement. (Id. Ex. 14.)

To cast doubt on the employer's proffered reason, the "employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (noting a plaintiff may not "substitute [her] business judgment for that of the employer"). In evaluating pretext, the Court determines "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reason to permit a reasonable factfinder to conclude that the employee's proffered legitimate reasons were not what actually motivated its conduct." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotations omitted).

Here, Plaintiff maintains that she was terminated for complaining about sexual harassment. In her deposition, she argued that another employee, Cynthia Elmore, made a comment similar to Plaintiff's ditch remark and was not terminated. (See Pl. Dep., at 144-50.) Plaintiff did admit, however, that Elmore received a write up for this comment. (Id. at 144-45.) This fact purportedly shows Defendant subjected Plaintiff to "unfair treatment" when it fired her for the same comment. (Id. at 148.) The Court disagrees.

This evidence does not address Defendant's proffered reason "head on" nor provide a sufficient rebuttal. First, Plaintiff was unable to provide any details on the context of Cynthia Elmore's use of the phrase or say whether it was perceived as a threat. (Id. at 147-48.) Further, it is not the Court's duty to second-guess the business judgment of employers. See Nix v. WLCY Radio/Rahall Commc'n, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair."). Defendant choosing to terminate Plaintiff and Chianta Young for the ditch comment but only issue Elmore a write-up is a business judgment that is owed deference from the Court. Simply put, Plaintiff's evidence does not provide a basis to conclude Defendant's proffered reason was pretextual.

Moreover, the termination decision was made by Cozzolino, approved by Reid, and reviewed by the ERB, none of whom were the targets of Plaintiff's allegations. While this fact alone may be insufficient to prove retaliatory animus did not cause Plaintiff's termination, it does support Defendant's position that the complaint of harassment played no role in the decision. The record shows that Defendant took the complaint seriously, performed an

extensive internal investigation, and tried to act consistently with past termination decisions. Overall, Plaintiff cannot create a genuine issue of material fact on this issue and Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Defendant carried its burden to negate an essential element of Plaintiff's sexual harassment and retaliation claims and Plaintiff, in turn, failed to create a genuine issue of material fact on either of those claims. Accordingly, Defendant's motion for summary judgment (Doc. 33) is **GRANTED**. The Clerk shall **ENTER JUDGMENT** for Defendant. The Clerk is further directed to **TERMINATE** all deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _15th_ day of March, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA